<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

_____
                                        :

| | |
|---|---|
| AEROGROUP INTERNATIONAL, INC., : | |
| : | |
|       Plaintiff, : | Civil Action No. 08-4217 (SDW) |
| : | |
|          v. : | **OPINION** |
| : | |
| OZBURN-HESSEY LOGISTICS, LLC, : | |
| et al., : | |
| : | |
|     Defendants/Third-Party Plaintiffs, : | |
| : | |
|          v. : | |
| : | |
| DISTRIBUTION MANAGEMENT : | |
| GROUP, INC., : | |
| : | |
|     Third-Party Defendant. : | |
| _____: | |

<u>**ARLEO, U.S.M.J.**</u>

      Before the Court is the application of defendants/third-party plaintiffs Ozburn-Hessey

Logistics, LLC and Ozburn-Hessey Holding Company, LLC (collectively "OHL") for attorneys'

fees and costs, (Dkt. No. 152), and the motions of plaintiff Aerogroup International, Inc.

("Aerogroup") and third-party defendant Distribution Management Group, Inc. ("DMG") seeking

reconsideration of the imposition of sanctions against them as set forth in the Court's August 12,

2010 Order.  (Dkt. Nos. 180 and 181).  Aerogroup and DMG oppose OHL's fee application.

OHL opposes the motions for reconsideration.

      After considering all of the parties' submissions, and for the reasons expressed on the

record on June 29, 2010 and below, and for good cause shown, the Court will deny both motions

for reconsideration and will grant OHL's fee application but reduce the amount of legal fees and

costs requested by OHL, and order Aerogroup to pay $ 114,655.16 in legal fees and $ 6,618.37 in

costs, and order DMG to pay $ 118,319.91 in legal fees and $ 6,618.37 in costs.

## I.  **BACKGROUND**

On June 29, 2010, this Court held an extensive hearing on, among other issues, OHL's

motion to compel discovery and application to impose sanctions.  The Court issued rulings from

the bench on that same date.  The Court granted OHL's motion to compel and application for

sanctions, requiring Aerogroup and DMG to evenly split the payment of OHL's reasonable

attorneys' fees and costs related to: (1)  OHL's efforts to obtain discovery related to the New

York state court action between non-party Freight Brokers Global Services, Inc. ("FBGS") and

DMG (the "FBGS Litigation"); (2) OHL's motion to compel that discovery against Aerogroup

and DMG; and (3) OHL's discovery of an investigation into the kickback scheme involving

former Aerogroup employee, Sam Nysembaum.  (8/12/10 Order at ¶¶ 1-2, 5).  The Court further

directed Aerogroup and DMG separately to pay OHL's reasonable attorneys' fees and costs

concerning OHL's counsel's efforts to obtain more responsive discovery answers from counsel

for Aerogroup and DMG, respectively, before OHL filed its motion to compel. (Dkt. No. 177).

The Court's oral rulings were memorialized in an Order, dated August 12, 2010.

Pursuant to the August 12, 2010 Order, OHL has submitted a fee application, requesting

reimbursement in the total amount of $817,657.06, which consists of both attorneys' fees and

costs.

2

## II.   MOTIONS FOR RECONSIDERATION

Local Civil Rule 7.1(i) states in relevant part:

> A motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge.  A brief setting forth concisely **the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked** shall be filed with the Notice of Motion.

L. CIV. R. 7.1(i) (emphasis added).  There are three bases for relief under a motion for reconsideration: "(1) an intervening change in controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice."  Carmichael v. Everson, 2004 WL 1587894 at * 1 (D.N.J. May 21, 2004).  See Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).  Relief by way of reconsideration is "an extraordinary remedy that is to be granted very sparingly."  Carmichael, 2004 WL 1587894 at *1.  See J.J.C. Boats, Inc. v. Hlywiak, 573 F. Supp. 2d 871, 873 (D.N.J. 2008).

The term  "overlooked" in the rule "is the operative term . . . and it has been interpreted consistently as referring only to facts and legal arguments properly presented to the court at the time the motion on which reconsideration is sought was initially decided."  ALLYN Z. LITE, NEW JERSEY FEDERAL PRACTICE RULES 73 (2009 ed.) (citing Polizzi Meats, Inc. v. Aetna Life & Casualty Co., 931 F. Supp. 328, 339 (D.N.J. 1996)).  However, "[t]he only proper ground for granting a motion for reconsideration . . . is that the matters or decisions overlooked, if considered by the court, might reasonably have altered the result reached."  Panna v. Firstrust Savings Bank, 760 F. Supp. 432, 435 (D.N.J. 1991) (internal quotations omitted).  Absent

unusual circumstances, a court should reject new evidence if it was not presented when the court rendered the contested decision.  Resorts Int'l, Inc. v. Create Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 n. 3 (D.N.J. 1992).

A party's assertion that reconsideration is appropriate to prevent a manifest injustice cannot be based solely on the party's mere disagreement with the court's initial decision – in that situation, the movant should seek relief through the appeals process.  See Florham Park Chevron, Inc. v. Chevron U.S.A., 680 F. Supp. 159, 162 (D.N.J. 1988).  A motion for reconsideration is improper when filed "to ask the Court to rethink what it had already thought through-rightly or wrongly." Ciba-Geigy Corp. v. Alza Corp., 1993 WL 90412, *1 (D.N.J. Mar. 25, 1993).

During the June 29, 2010 hearing, the Court ruled that "there was an attempt [by OHL] to obtain the discovery in advance, the non-disclosure was not substantially justified, and there is not a circumstance that makes an award of expenses unjust."  (6/29/10 Trans. at 73:21-24).  Accordingly, this Court exercised its discretion to impose monetary sanctions, under FED. R. CIV. P. 37(a)(5)(A), (c)(1) and 16(f).  Specifically, the Court ordered payment of reasonable fees and expenses, which OHL incurred in connection with the withheld discovery.  (Id. at 74:19-25 - 75:1-13).

Aerogroup and DMG move for reconsideration of the August 12, 2010 Order, imposing sanctions based on alleged newly available evidence and to prevent manifest injustice.[1]   They

---

[1] The Court notes that, before filing their instant motions for reconsideration, both Aerogroup and DMG had informally moved to reconsider the Court's oral rulings of June 29, 2010 imposing sanctions.  (Dkt. Entry Nos. 159 and 160).  On July 29, 2010, this Court issued an Order, denying their initial requests for reconsideration.  On August 6, 2010, both Aerogroup and DMG opposed OHL's fee application, which included a second attempt to convince this Court to reconsider its June 29th rulings.  Although the Court could properly disregard these earlier requests for reconsideration, the Court has considered them in its analysis herein.

raise five principal arguments to support reconsideration.  For the reasons that follow, this Court finds that Aerogroup and DMG raise no legitimate basis to warrant reconsideration, and thus will deny both motions.

**A.      Newly Available Evidence**

1.      <u>OHL's Prior Knowledge of the FBGS Litigation</u>

Aerogroup and DMG argue that OHL's counsel's billing entries; the August 16, 2010 Declaration of OHL's counsel, Samuel B. Santo, Jr. ("Santo Declaration"); and a November 9, 2009, Offer of Proof from the FBGS Litigation is newly available evidence, demonstrating that OHL knew about the relevancy of the FBGS Litigation in December 2009 – months before FBGS produced the FBGS Litigation documents to OHL in March 2010.  Furthermore, they contend that the billing entries suggest that, as early as December 2009, OHL's counsel possessed documents relating to the FBGS Litigation, and responsive to the discovery sought in this case.  In opposition, relying heavily on Mr. Santo's Declaration, OHL denies having possessed, let alone having any knowledge, of the critical FBGS Litigation documents, relevant to the instant suit, and germane to this Court's June 29, 2010 rulings and August 12, 2010 Order.

This Court has carefully reviewed the relevant billing entries of OHL's counsel, Mr. Santo's Declaration and documents attached thereto, and the Offer of Proof from the FBGS Litigation.  None of this so-called new evidence refutes the fact that Aerogroup and DMG intentionally failed to produce critically relevant documents from the FBGS Litigation – which was the catalyst for this Court's decision to impose sanctions.

In any event, I am satisfied, that based on this "evidence," OHL did not possess any of the relevant documents from the FBGS Litigation before FBGS' March 2010 production.  I am also

5

satisfied that OHL, through Mr. Santo, diligently tried to obtain documents responsive to subpoenas served on FBGS and its owner for several months before ultimately receiving the documents from FBGS in March 2010.  In short, neither OHL's counsel's billing entries nor Mr. Santo's Declaration or documents attached thereto amount to newly available evidence that would warrant reconsideration.

Finally, as to the Offer of Proof, by DMG's own admissions, OHL submitted this document in connection with its May 21, 2010 motion to compel, which was the subject of the June 29, 2010 hearing.  Thus, DMG had ample opportunity to argue the significance of that pleading during that hearing, but did not.  Whether this Court "overlooked" a matter refers "only to facts and legal arguments properly presented to the court at the time the motion on which reconsideration is sought was initially decided."  LITE, supra.

2.       Discovery Was Primarily Sought from DMG

Aerogroup further argues that OHL's counsel's billing entries and Mr. Santo's Declaration reveal that OHL primarily sought the disputed discovery from DMG.  Thus, any award of sanctions should be apportioned accordingly. (8/12/10 Order,¶¶ 1-2, 5).

This Court has carefully reviewed the transcript of the June 29, 2010 hearing as well as its August 12, 2010 Order.  Aerogroup raised this same argument at the June 29, 2010, which the Court rejected at that time.  Indeed, at the hearing, the Court reasoned that the documents withheld, particularly the affidavit of Aerogroup's CEO, are highly relevant.  (6/29/10 Trans. at 49:21-25 - 50:1-3; 74:19-25 - 75:1-8).  I am convinced that Aerogroup's disagreement with the Court's ruling, which follows FED. R. CIV. P. 37(a)(5)(A), (c)(1) and Rule 16(f), granting a federal judge the sound discretion to impose such sanctions, (id. at 72:11-25 – 74:1-14), does not

6

raise issues which the Court "overlooked" as required by L. Civ. R. 7.1(i), governing motions for reconsideration. Indeed, "a motion to reconsider does not generally afford a litigant 'a second bite of the apple.'" Garrett v. Firestone Tire & Rubber Co., 1989 WL 21778 (D.N.J. Mar. 7, 1989).

### 3.   OHL's Failure to Specifically Request Discovery From DMG

DMG argues that OHL's billing entries reveal that, after OHL learned of the FBGS Litigation, it did not specifically request any such related discovery from DMG. DMG highlights that this new evidence shows that OHL did not properly seek to meet and confer before filing its motion to compel. This is not new evidence because DMG previously raised this same argument during the June 29, 2010 hearing, which the Court rejected at that time. (6/26/10 Trans. at 62:23-25 - 63:1-11).

### B.   **Manifest Injustice**

### 1.   The Amount of Fees and Costs Sought Shows Bad Faith

Aerogroup and DMG next contend that OHL's $800,000.00 fee application shows bad faith. Thus, any such imposition of sanctions would be a manifest injustice. This is a back door attempt to convince this Court to rethink what it has already carefully thought through during the June 29, 2010 hearing. Indeed, manifest injustice cannot be based solely on Aerogroup's and DMG's mere disagreement with this Court's prior ruling.[2] See Florham Park Chevron, Inc., 680 F. Supp. at 162.

### 2.   Denial of Aerogroup's Similar Motion to Compel and for Sanctions

---

[2] To the extent Aerogroup and DMG challenge the amount of fees and costs to be awarded, rather than whether such monetary sanctions should be awarded in the first instance, the Court addresses this argument in its analysis of OHL's fee application herein.

Aerogroup contends that the Court unfairly denied its motions to compel and for sanctions against OHL, while granting OHL's strikingly similar motions. Aerogroup claims that the Court's seemingly conflicted rulings cannot be reconciled, and thus, reconsideration of OHL's motions to compel and for sanctions is warranted. As noted above, Aerogroup's disagreement with the Court's rulings does not raise issues which the Court "overlooked" as required by L. CIV. R. 7.1(i).

In any event, notwithstanding Aerogroup's assertions to the contrary, in a subsequent hearing on July 14, 2010, this Court distinguished Aerogroup's and DMG's deliberate withholding of documents, that justified imposing sanctions, from OHL's alleged failure to produce documents in response to nonspecific document requests. The Court found that Aerogroup's document requests were not narrowly tailored to the discovery sought, and thus, it was not appropriate to impose sanctions, despite the relevancy of the information sought. (7/14/10 Trans. at 89:14-25 – 90:1-5).

In short, as Aerogroup and DMG cannot show that reconsideration is necessary to correct a clear error of fact or law or that new evidence has become available, their motions for reconsideration are **DENIED**.

## III.   OHL'S FEE APPLICATION

The Court next considers OHL's application for fees and costs. OHL seeks attorneys' fees and costs in the amount of $817,657.06 with $405,133.78 to be paid by Aerogroup and $412,523.28 to be paid by DMG.[3]

---

[3] The Court notes that, in opposing the fee application, Aerogroup claims that OHL seeks $ 768,276.34 in total attorneys' fees and $ 25,137.99 in total costs. These unexplained discrepancies are of no consequence given the Court's reduction of the requested fees and costs.

As detailed below, the cornerstone to determining the reasonableness of requested fees is examining the attorney's reasonable hourly rate and number of hours reasonably spent performing the work.  Aerogroup alone contests the reasonableness of OHL's counsel's hourly rates.  Yet, both Aerogroup and DMG contend that the amount of fees and costs requested is excessive and unreasonable.  They claim that the legal work performed by the attorneys at the New Jersey law firms of Lowenstein Sandler ("Lowenstein") and Bressler Amery and Ross ("Bressler Amery") as well as pro hac vice attorneys at the Tennessee firm of Bass Berry and Sims ("Bass Berry") is duplicative and wasteful, especially given the discrete discovery issues, which serve as the basis of the fee application.

Furthermore, they argue that OHL seeks fees beyond the scope of the Court's August 12, 2010 Order, including fees for post-hearing work, such as preparing an order and the instant fee application.  They further challenge undocumented costs, counsel's travel time, use of more experienced attorneys to perform nonlegal or simple legal tasks, and claim that the time billing entries are vague and confusing, making it impossible to determine the reasonableness of the work performed.  Finally, Aerogroup contends that OHL seeks reimbursement for the billable time of attorney David Libowsky of Bressler Amery for discovery related solely to DMG .[4]

A.      **Legal Standard**

Significantly, FED. R. CIV. P. 37 requires that the attorneys' fees or costs be reasonable. See Mosaid Tech, Inc. v. Samsung Elecs. Co., 224 F.R.D. 595, 597 (D.N.J. 2004).  To determine

---

[4] Aerogroup raises several other arguments as grounds to oppose the fee application, which it had also asserted in support of its motion for reconsideration.  The Court has already considered and rejected each of these arguments as a basis to justify reconsideration.  The Court's analysis applies with equal force here, and thus, it will not again address Aerogroup's arguments in connection with OHL's fee application.

the amount of reasonable fees, the Court must calculate the "lodestar" amount by multiplying the attorney's reasonable hourly rate by the number of hours reasonably spent." Interfaith Cmty. Org. v. Honeywell Intern, Inc., 426 F.3d 694, 703 (3d Cir. 2005). See, e.g., Watchel v. Health Net, Inc., 2007 WL 1791553, * 2 (D.N.J. Jun. 19, 2007) (applying "lodestar" method to fees awarded under Rule 37). The moving party, here OHL, bears the burden of proving, through competent evidence, the reasonableness of the hours worked and rates claimed. Washington v. Philadelphia County Court, 89 F.3d 1031, 1035 (3d Cir. 1996). See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)). "If it wishes to challenge the fee award, the opposing party must then object 'with sufficient specificity' to the [fee] request." Interfaith Cmty. Org., 426 F.3d at 703 (quoting Rode, 892 F.2d at 1183). Once opposed, "the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable."[5] Id. at 703.

The proper starting point for calculating the reasonable hourly rate is the "prevailing market rates in the relevant community." Interfaith Cmty. Org., 426 F.3d at 703.[6]

---

[5] "'Although [a] respondent's objections to the fee petition must be clear, a party challenging a fee petition need not always challenge specific time entries and have the court find that some specific time entry was unreasonable or unnecessary....'" Apple Corps. Ltd. v. Int'l Collectors Soc'y, 25 F. Supp.2d 480, 485 n.4 (D.N.J. 1998) (quoting Bell v. United Princeton Properties, Inc., 884 F.2d 713, 720 (3d Cir. 1989)). Accordingly, the opposing party's objections are sufficient, for example, if it alleges the excessiveness of hours expended on particular categories of work. Id.

[6] While the parties do not dispute the standard for calculating fees, only OHL asserts that the "relevant community" in this matter is the State of New Jersey. Aerogroup argues that the relevant community is the state of Tennessee, where the lead counsel for OHL is located. Consistent with the Third Circuit's reliance on the "forum rate rule," this Court concludes that the State of New Jersey is the relevant community for purposes of calculating the reasonable hourly rate in this case. See Interfaith Community Organization, 426 F.3d at 705 (noting that the "forum rate rule permits an attorney to claim the prevailing rate for services rendered in the forum of the litigation).

"[T]o determine 'the prevailing market rates in the relevant community,' a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Interfaith Cmty. Org., 426 F.3d at 708 (quoting Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir.2001)).

The party requesting fees has the burden of demonstrating the reasonableness of the fees by submitting evidence of the appropriate hourly rate.  Washington, 89 F.3d at 1035 (3d Cir. 1996).  See Smith v. Philadelphia Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997);  Apple Corps Ltd., (reinforcing rule that party seeking fee award bears the burden of documenting number of hours worked and hourly rates claimed).  Attorneys may not rest on their own affidavits to support a party's claim of reasonable fees; rather, they must submit evidence that the requested rates fall within the norm of attorneys in the relevant community.  See Rode, 892 F.2d at 1183;  see also P.G. v. Brick Twp. Bd. of Ed., 124 F. supp. 2d 251, 261 (D.N.J. 2000).  In determining a reasonable hourly rate, the Court must first examine "the attorney's usual billing rate, but this is not dispositive."  Loughner, 260 F.3d at 180 (quoting Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995)).  The district court should "determine the currently prevailing rates in the community for comparable legal services at the time the fee petition was filed."  Lanni v. New Jersey, 259 F.3d 146, 150 (3d Cir. 2001).

Once a reasonable hourly rate is determined, the Court must next consider whether the time expended is reasonable.  The court should exclude "hours that are not 'reasonably expended' by virtue of excessiveness, redundancy, or lack of necessity." Mosaid Techs, Inc., 224 F.R.D. at 597 (quoting Rode, 892 F.2d at 1183).  See Public Int. Research Group of N.J., 51 F.3d

11

at 1188.

The court has significant discretion in determining the lodestar amount; however, once it is determined, the lodestar amount is presumably reasonable.  Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001).  See Rode 892 F.2d at1183.  After the lodestar amount has been calculated, either party may seek adjustment.  Id.  In its discretion, the court may increase or decrease the lodestar "'if the lodestar is not reasonable in light of the results obtained. This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims.'"  Apple Corps Ltd., 25 F. Supp.2d at 485 (quoting Rode, 892 F.2d at 1183)).

**B.     Hourly Rates**

Consistent with the Third Circuit's directive, this Court first examines the reasonableness of OHL's counsel's hourly rates.  Here, OHL's counsels' and support staffs' hourly rates are as follows:

1.      Lowenstein attorneys David Harris, Esq. - $625, Samuel Santo, Esq. - $500, and Thomas Dolan, Esq. - $340; Lowenstein para-professionals Odin Medina - $160, Keith Campbell - $175, Aneela Suhail - $135, Christy Duff - $160, Marjorie Cross - $160 and Kathryn Taggart - $125;

2.      Bressler Amery attorney David Libowsky, Esq. - $425;[7]

3.      Bass Berry attorneys Michael Dagley, Esq. - $405 and $450,[8] Joshua Denton, Esq. - $283.50 and $315, Erica Vick, Esq. - $265, Erin Everitt, Esq. - $235, Lucas Smith, Esq., - $211.50 and $235, Brian Iverson, Esq. - $180, Charles Jarboe, Esq., - $180, Emoke

---

[7] Mr. Libowsky originally served as local counsel for OHL until his withdrawal from the case on May 20, 2009. (David Libowsky Declaration, ¶¶ 2-3).

[8] A review of the time entries reveals that several attorneys billed at two different hourly rates.  Presumably, their individual hourly rates increased during the course of the litigation.

Pulay, Esq. - $180, J. Andrew Goddard, Esq. - $430, John Dawson, Esq. - $162 and $180, Sarah Bogni, Esq. - $ 180;[9] Bass Berry paralegals and litigation technology staff Barry Willms - $160.39, Beth McCaskill - $77.50, Barry Williams - $92.50, Callie Woosley - $92.50, Kerri Williams - $72.50, Karl Bridgers - $95, R. Matthew Gibson - $117.50, Sandra Ward - $130, Stephen Krell - $112.50, and Susan Bible - $77.50.

In support of its request for attorneys' fees, OHL submits declarations from its own attorneys: Mr. Harris and Mr. Santo from Lowenstein, Mr. Dagley from Bass Berry, and Mr. Libowsky from the Bressler Amery firm.  OHL further submits the declaration of attorney Jeffrey Cohen of the New Jersey law firm of Anderson Kill & Olick.  In his declaration, Mr. Cohen states that based on his years of experience in the legal profession, the stellar reputation of Lowenstein and attorney Harris, and Mr. Cohen's retention of Lowenstein as counsel on previous cases, Mr. Cohen believes that the "hourly rate of $650 to $700 for an attorney of Mr. Harris's caliber, experience and reputation would be considered market rate in a premier firm in New Jersey.  The hourly rates charged by Mr. Santo are also well within the market rates." (Cohen Decl., ¶¶ 2, 3).  Yet, Mr. Cohen admitted that he is not familiar with Bass Berry, but its hourly rates "appear to be low for this [New Jersey] market."  (Id. at ¶ 2).

In challenging the reasonableness of the attorneys' hourly rates, Aerogroup disputes only the hourly rates for the Bass Berry attorneys.  Aerogroup argues that, by retaining Bass Berry to be its lead counsel, OHL has forfeited its right to collect for the Lowenstein attorneys' fees and costs, who served only as local counsel.  Thus, according to Aerogroup, the reasonableness of Lowenstein's hourly rates are moot.

Aerogroup's position appears based on an assumption that Tennessee is the relevant

---

[9] Attorney Michael Dagley provides a declaration in support of OHL's fee application.  As part of Exhibit A to Mr. Dagley's Declaration is a list of initials that correspond to the Bass Berry attorneys and support staff, who worked on the discovery disputes related to the award of sanctions.  Among those names and initials is attorney Brian M. Dobbs ("BMD").  However, despite this Court's careful review of all the time entries, Mr. Dobbs does not appear to have billed any time to the discovery disputes at issue.

market.  However, this Court has already determined that consistent with the Third Circuit's reliance on the "forum rate rule," New Jersey is the relevant community for purposes of calculating the reasonable hourly rate in this case.  See Interfaith Cmty. Org., 426 F.3d at 705. Accordingly, the proper inquiry is whether OHL's submissions satisfy its burden of showing the reasonableness of the requested hourly rates for both the New Jersey and Tennessee attorneys under the "forum rate rule."

The supporting OHL attorney declarations do not detail the prevailing rates for New Jersey attorneys comparable to those of OHL's attorneys in this case.  Aerogroup contends that OHL's supporting declarations are conclusory and fall woefully short of what the law requires in this Circuit.  However, in its reply brief, OHL relies on recent cases from the Third Circuit Court of Appeals and this District wherein the courts determined that a range of hourly fee rates, comparable to the ones requested in this case, were reasonable.  See, e.g., Jama v. Esmor Correctional Servs., Inc., 577 F.3d 169, 181 (3d Cir. 2009) (Third Circuit noting that fees ranging from $600 for a partner to $205 for a first-year associate were reasonable hourly rates);  Nat'l Elec. Benefit Fund v. Starko Elec. Servs., Inc., 2010 WL 1049980, at * 4 (D.N.J. Mar. 16, 2010) (Judge Greenaway determining that hourly billing rates ranging from $650 for partners, $425 for associates, and $200 for paralegals were reasonable).  Based on the supporting declarations and relevant case law, OHL contends that the hourly rates for both the Lowenstein attorneys and Bass Berry attorneys are well within the prevailing rates of New Jersey.  Indeed, according to OHL, the hourly rates for Bass Berry attorneys, which range from $162 to $450, are significantly lower than the rates for New Jersey attorneys.

I am satisfied that OHL has proffered sufficient evidence as to the experience of the attorneys at Lowenstein, attorneys Dagley and Denton at Bass Berry, and attorney Libowsky at Bressler Amery who worked extensively on this case.  OHL does not, however, proffer any evidence of the attorneys at Bass Berry, including attorneys Brian Dobbs, Charles Jarboe, Emoke

Pulay, J. Andrew Goddard, John Dawson, and Sarah Bogni, who also worked on this matter. Although such an omission prohibits this Court from calculating fees with an exact precision, the hourly rates of up to $625 for partners, $340 for associates, and $160 for para-professionals is within the arena of reasonable rates, as Judge Greenaway recently analyzed in National Electrical.[10]  See National Electrical Benefit Fund, 2010 WL 1049980, at * 4 (citing Watchel, 2007 WL 1791553, at * 3).  Indeed, the hourly rates of Bass Berry attorneys and support staff – up to $450 for partners, $265 for associates, and $130 for paralegals is significantly below the prevailing market rates in New Jersey.

In short, this Court finds that OHL's proffered evidence including the recent cases in this Circuit satisfy OHL's burden of showing the reasonableness of the requested rates for all of OHL's attorneys.  In any event, Aerogroup offers no contrary evidence.  It merely challenges the claimed hourly rates of the Bass Berry attorneys, which is insufficient to contest the proposed rates.[11]  See Lanni, 259 F.3d at 150 (The opposing party may challenge the reasonableness "only with appropriate record evidence . . . . [I]t is not enough merely to contest the claimed hourly rate.").

---

[10] The Court notes that National Electrical was decided within four months of OHL filing its fee application.  Thus, the rates determined to be reasonable in that case represent the currently prevailing rates in the community.

[11] In opposition, Aerogroup also insists that given the amount of fees requested and alleged time expended, Aerogroup is entitled to an evidentiary hearing before any fees are awarded consistent with the law in this Circuit.  (Aerogroup Opp. at 10).  Aerogroup misstates the law.  Rather, in the context of determining the reasonableness of an attorney's hourly rate, an evidentiary hearing "'must be held only where the court cannot fairly decide disputed questions of fact without it.'"  Drelles v. Metropolitan Life Ins. Co., 90 F. App'x 587, 591 (3d Cir. Jan. 12, 2004) (quoting Blum v. Witco Chem. Corp., 829 F.2d 367, 377 (3d Cir. 1987)).  Here, this Court is satisfied that there is no need to have a hearing.  OHL's counsel's declarations and briefs as well as Judge Greenaway's analysis in National Electrical speak for themselves.  Aerogroup does not proffer any contradictory evidence as to reasonable billing rates.  See Drelles, 90 F. App'x at 591.

C.      **Time Expended**

OHL seeks $292,599.00 in attorneys' fees and $17,212.77 in costs on behalf of

Lowenstein, its current local counsel.  (Harris Decl., at ¶¶ 12, 14).[12]  OHL further seeks

$8,202.50 in attorneys' fees and $642.47 in costs on behalf of Bressler Amery, its former local

counsel.  (Libowsky Decl., at ¶ 7). Finally, OHL seeks $487,896.59 in attorneys' fees and $

7,975.75 in costs on behalf of Bass Berry, its out of state counsel.  (Dagley Decl., at ¶¶ 18-19 at

Exhs. A-C).  Thus, OHL seeks to recover attorneys' fees in the amount of $788,698.09 and costs

of $25,830.99, or a total of $814,529.08.

The Court has carefully considered the hours spent by the attorneys and legal staff in

support of OHL's application for reasonable attorneys' fees and costs.  For the reasons explained

below, the Court will **GRANT** OHL's fee application but reduce the amount of expended hours

to be reimbursed.  The precise amount of reasonable fees and costs to be awarded for time

expended is set forth in Section IV of this opinion.[13]  As is evident from the Court's analysis

below, the precise award excludes time spent on unnecessary tasks, duplicating efforts and/or

excessiveness.

_____

[12] The Court notes that based on its own review and calculation of the total fees included in Exhibits A, A-1 and A-2 attached to Mr. Harris' Declaration, the total amount of fees sought is $295,727.00.  This unexplained discrepancy is of no moment given the Court's decision to reduce the total fee amount requested by OHL.

[13] While the Court would have preferred to perform a time entry-by-entry analysis, given the number of law firms and lawyers involved, the manner in which some time entries recorded multiple tasks, and the generality of some of the time entries, such a precise analysis was virtually impossible.  Instead, the Court reviewed all time entries, and then considered whether the tasks were necessary, and if so, the amount of time needed to perform them.  The Court then conservatively arrived at a logical determination of the number of hours reasonably needed for the work.  See Section IV of this Opinion.  See also Maldonado v. Houstoun, 256 F.3d 181, 186-188 (3d Cir. 2001)

As noted above, under <u>Hensley</u>, if the fees are "excessive, redundant, or otherwise unnecessary," they must be reduced accordingly. 461 U.S. at 434.  In short, the over $800,000.00 fee application is excessive.  Accordingly, as set forth in Section IV of this opinion, the Court shall reduce the attorneys' fees which OHL is entitled to recover from Aerogroup to $114,655.16 and from DMG to $118,319,91.  The Court shall also reduce OHL's costs to be reimbursed, and order Aerogroup to pay $6,618.37 and DMG to pay $6,618.37.

As Judge Orlofsky astutely noted in <u>Microsoft Corporation</u>, "[e]xcessive legal fees, if not checked by the exercise of billing judgment or, in this case, this Court's inherent powers, will be borne unjustly by someone, be that a losing adversary, a client, or a client's unsuspecting customers or shareholders.  The duty imposed by the Rules of Professional Conduct to represent a client zealously does not create a license to write a blank check for excessive legal fees." <u>Microsoft Corp. v. United Computer Resources of New Jersey, Inc.</u>, 216 F. Supp.2d 383, 386 (D.N.J. 2002).

In determining whether the hours expended by OHL's attorneys are reasonable, this Court considers Aerogroup's and DMG's contention that many tasks were unreasonably excessive, duplicative and unnecessary.  Aerogroup and DMG take issue with the following work performed: (1) document review by at least seven lawyers between late March and early April 2010; (2) vaguely described internal meetings and strategy sessions; (3) third party discovery unrelated to the FBGS Litigation; (4) multiple attorneys having researched and written briefs; (5) multiple attorneys having prepared for and attended the June 29, 2010 oral argument; (6) preparation and testing of a slide show marginally used during June 29, 2010 oral argument;  (7) senior attorneys having performed junior-level and/or nonlegal work; (8) travel time of

17

Lowenstein and Bass Berry attorneys; (9) post-hearing work, which included preparing a proposed order and fee application - totaling $70,954.75; (10) several vague billing records, making it impossible to determine the reasonableness of the time expended; (11) insufficiently documented costs, such as legal on-line research, meals, and fares; and (12) all of Mr. Libowsky's billable time because his work performed was beyond the scope of the Court's August 12, 2010 Order.[14]

As detailed below, this Court finds that many of Aerogroup's and DMG's challenges are well-founded.  OHL was clearly entitled to investigate the merits of its allegation that Aerogroup and DMG were withholding critically relevant documents.  Indeed, OHL discovered the highly relevant evidence due solely to its own counsel's diligent efforts and the discovery sought and ultimately produced by Molfetta and FBGS was voluminous.  Although such conduct justified the imposition of sanctions, the controlling standard is that the Court award <u>reasonable</u> fees and costs.  The various tasks at hand did not justify the efforts of a legal team of twenty-three in a relatively straight-forward breach of contract and tortious interference case.

1.    <u>Bass Berry And Bressler Amery's Fees and Costs Through June 22, 2009</u>

Consistent with this Court's August 12, 2010 Order, OHL is entitled to reasonable fees and costs in connection with its efforts to issue subpoenas on Matthew Molfetta, Freight Brokers, Inc., and DMG (before it was a third-party defendant), including OHL's motion to compel DMG's compliance with the subpoena.  (Aug. 12, 2010 Order, ¶ 1).  Yet, after carefully

---

[14] Aerogroup alone contends that OHL improperly seeks reimbursement for fees relating only to discovery sought from DMG.  The Court notes that Aerogroup raised, and the Court rejected, this same argument at the June 29, 2010 and in connection with its pending motion for reconsideration.

reviewing the billing records of Bressler Amery attorney Libowsky, OHL's former local counsel, as well as Bass Berry attorneys Denton, Dawson, Smith, Dagley, and Vick; Mr. Williams, an ESI Consultant/Litigation Technology specialist; and Beth McCaskill, a paralegal, I find that the work performed by both firms was duplicative,[15] the number of hours spent on obtaining this particular third party discovery was excessive, and the work could have been accomplished with fewer attorneys and support staff.

The billing records of the Bass Berry attorneys reveal that their firm alone performed nearly all of the work associated with issuing the subpoenas and attempting to obtain compliance in connection therewith.  Mr. Libowsky's billing records reveal that he was not lead counsel, but rather merely assisted the Bass Berry attorneys in their pursuit of the third party discovery.  At no point did Mr. Libowsky take over the management of the case.  Accordingly, there was a clear duplication of efforts, which warrants a reduction of Mr. Libowsky's fees by 60%, such that he will be reimbursed $3,281.00 in fees.  Mr. Libowsky will be awarded $642.47 in requested costs as they do not appear to be duplicative of Bass Berry's costs.  Reimbursement of Mr. Libowsky's reduced fees are to be split evenly between Aerogroup and DMG.

Next, the Court considers the reasonableness of Bass Berry's amount of time expended through the period ending June 22, 2009.  From February 6, 2009 through June 22, 2009, Bass Berry routinely staffed one partner and three associates (while simultaneously having Mr. Libowsky assist them) to work on the following tasks related to the subpoenas:  preparing the

---

[15] Significantly, it appears from the billing records submitted by Lowenstein, Bass Berry, and Bressler Amery that, up until June 22, 2009, this work was undertaken before Lowenstein was brought into the case.  Thus, the Court will separately address whether any of the performed work by Lowenstein post-June 22, 2009 was duplicative of Bass Berry's efforts.

19

subpoenas; conducting legal research; participating in strategy meetings; sending email correspondence; reviewing DMG's objections to same; preparing and participating in phone conferences with DMG counsel, Matthew Molfetta, and the Court; and preparing the motion to compel papers and related proposed order. Thus, OHL, through Bass Berry, expended 162.7 hours of attorney time amounting to $45,956.55;  7.5 hours of paralegal time amounting to $581.25; and 6.5 hours of a litigation technology specialist's time amounting to $1,042.54.

Although OHL's counsel was compelled to serve the subpoenas and file a motion to enforce them, OHL does not appear to argue that the legal issues related to the subpoenas were complex or novel.  Additionally, the nearly $46,000.00 billed by the Bass Berry attorneys and $ 1,623.79 in support staff fees were spent on a discrete third party discovery dispute over a four month period, which did not even include reviewing a document production or depositions. Thus, this Court finds that Bass Berry expended an unreasonable number of hours and work performed by too many attorneys.  See Rode, 892 F.2d at 1192 (determining that "[h]ours are excessive if they represent more time than is reasonably necessary to complete the task.").  A reduction of Bass Berry's fees by 50% is warranted, such that Bass Berry will be reimbursed $23,790.17 in fees for work performed from February 6, 2009 through June 22, 2009.

The precise amount to be awarded for such work is set forth in Section IV of this opinion. Reimbursement of all the above-referenced reduced fees are to be split evenly between Aerogroup and DMG.

       2.     Bass Berry and Lowenstein's Requested Fees Jointly
            From DMG and Aerogroup

Next, this Court addresses whether the tasks performed by the Lowenstein and Bass Berry

attorneys and support staff beginning on June 24, 2009 were unreasonably excessive, duplicative and/or unnecessary.  In seeking reimbursement for both firms' fees, OHL claims that the deliberate and unjustified withholding of a critical and massive amount of relevant documents required the efforts of both the Lowenstein and Bass Berry attorneys.  OHL further claims that these attorneys performed only necessary work to obtain the discovery sought and seek sanctions for the failure of Aerogroup and DMG to produce same.  This Court disagrees.

The Court finds that a legal team of twenty-three to uncover, organize and analyze the discovery withheld by Aerogroup and DMG as well as seek relief from the Court in connection therewith is excessive.  Indeed, Lowenstein staffed two senior partners, Harris and Santo, (whose hourly rates range from $500 to $625); one associate, Dolan (whose hourly rate is $340); and six para-professionals, Medina, Campbell, Suhail, Duff, Cross, and Taggart (whose hourly rates range from $125 to $175).  Bass Berry routinely staffed – two partners, Dagley and Denton (whose hourly rates range from $283.50 to $450); six associates, Smith, Bogni, Pulay, Everitt, Iverson, and Jarboe (whose hourly rates range from $162 to $235); and paralegals and litigation technology specialists McCaskill, Williams, Bridgers, Gibson, Ward and Bible (whose hourly rates range from $ 72.50 to $ 130).

This legal team of twenty-three performed various tasks involving the following: (1) reviewing the FBGS Litigation document production; (2) conferring; (3) attending legal team strategy meetings; (4) legal researching; (5) preparing, reviewing and revising legal briefs and other papers in support of OHL's motions to compel and for sanctions; (6) preparing for and/or attending the May 4, 2010 telephone conference and June 29, 2010 hearing before this Court; and (7) preparing post-hearing orders and the instant fee application.  Lowenstein spent over 585

21

hours performing these tasks.  Bass Berry spent over 1,600 hours.  Together, these two firms incredibly billed over 2,100 hours.  Pursuant to the August 12, 2010 Order, Aerogroup and DMG are to evenly split the payment of reasonable fees for such billable time.

Lowenstein and Bass Berry also expended a significant amount of time corresponding with counsel for Aerogroup and DMG, respectively, regarding the withheld discovery before OHL filed the motions to compel against them.  Lowenstein spent over 22 hours as to Aerogroup and 40 hours as to DMG.  Bass Berry spent over 44 hours as to Aerogroup and over 41 hours as to DMG.  The August 12, 2010 Order provides that Aerogroup and DMG are to separately bear reasonable fees for the work performed concerning them, respectively.

The precise amount of all such fees and costs to be awarded for such work is set forth in Section IV of this opinion.

> a.    *Duplication of Efforts*

The billing records of Lowenstein and Bass Berry contain countless examples of needless duplication of efforts.  The Court highlights the most obvious examples as follows:

> 1.    From July 1, 2009 through December 11, 2009, seven attorneys (Harris, Santo, and Dolan from Lowenstein and Denton, Vick, Smith and Iverson from Bass Berry) prepared, reviewed, and revised the subpoenas as well as conferred and strategized concerning compliance therewith.  For this work, Lowenstein spent over 27 hours, while Bass Berry spent over 13 hours.

> 2.    From April 28, 2010 through April 30, 2010, seven attorneys (Santo, Dolan, Denton, Smith, Bogni, Everitt, and Pulay) prepared, reviewed, and revised a six page letter, dated April 30, 2010 (with multiple exhibits), to this Court in connection with the discovery disputes at hand.  For this work, Lowenstein spent over 7 hours while Bass Berry spent over 45 hours.[16]

---

[16] The Court's calculation of Bass Berry's hours does not include partner Dagley's time of 4.5 hours billed on April 28 and 29, 2010 because it is unclear whether his vaguely described time entry, "work on Freight Brokers issues," involved working on the April 30, 2010 letter to

3.      Following the production of voluminous documents from the FBGS Litigation in March 2010, eleven attorneys (Harris, Santo, Dolan, Denton, Dagley, Smith, Everitt, Bogni, Jarboe, Iverson, and Pulay) along with three paralegals (Cross, Williams and McCaskill) were involved in reviewing the document production.  Although it is difficult to precisely calculate the number of hours spent given the billing entry descriptions for this work, the Court conservatively calculates Lowenstein to have spent over 50 hours while Bass Berry spent over 200 hours.

4.      Six attorneys — Lowenstein attorneys Santo and Dolan as well as Bass Berry attorneys Everitt, Smith, Jarboe, and Pulay — researched legal issues related to discovery violations as well as OHL's motion to compel and/or for sanctions.  Again, for this work, the Court conservatively calculates Lowenstein to have spent over 12 hours while Bass Berry spent over 50 hours.

5.      Nine attorneys — Lowenstein attorneys Harris, Santo and Dolan as well as Bass Berry attorneys Denton, Iverson, Jarboe, Pulay, Everitt, and Smith — drafted, reviewed, and revised legal memoranda and briefs in support of OHL's motion to compel and/or for sanctions.  Again, for this work, the Court conservatively calculates Lowenstein to have spent over 50 hours while Bass Berry spent over 100 hours.

In sum, for these tasks, Lowenstein spent 146 hours while Bass Berry spent 408 hours.

Notwithstanding the sanctionable conduct of both Aerogroup and DMG and voluminous amounts of discovery withheld, it is evident that sophisticated attorneys, such as the ones retained by OHL in this case, need not duplicate efforts or overstaff their legal team on relatively straight-forward issues.  See Maldonado v. Houstoun, 256 F.3d 181, 185 (3d Cir. 2001) (noting that the "principal concern is whether the time claimed [working on an appeal] is reasonable for the services performed, a concern which is accentuated because of the many lawyers involved in behalf of the plaintiffs.").  Indeed, the legal issues themselves, the apparent relevancy of the documents withheld, and legal standard for imposing sanctions, are not complex or novel.

A reduction for duplicative work "'is warranted only if the attorneys are unreasonably

the Court.

23

doing the same work.'" Rode, 892 F.2d at 1187 (internal quotation omitted). Here, although a certain amount of communication between co-counsel was necessary during the course of litigation, four partners, seven associates, and a dozen support staff members were unreasonably performing the same work. Coordination between counsel at Lowenstein and Bass Berry would have reduced the number of hours required for the above-referenced tasks. In short, their efforts were duplicative, and thus a reduction in fees and costs, as described in Section IV of this opinion, is warranted.[17] See, e.g., Halderman by Halderman v. Pennhurst State School & Hosp., 49 F.3d 939, 944 (3d Cir. 1995) (granting adversary's request for a fifty-percent reduction in the principal attorney's number of hours spent in preparation of the proposed findings of fact based on duplication of efforts); Microsoft Corp., 216 F. Supp.2d at 390 (reducing national and local counsel's fees by half due to duplicative work in connection with contempt proceeding); Garden State Auto Park Pontiac GMC Truck, Inc. v. Electronic Data Sys. Corp., 31 F. Supp.2d 378, 387 (D.N.J. 1998) (reducing fees of lead and local counsel by half because of duplication of work during case).

b.      *Unnecessary Work and Excessiveness*

The Court finds that the attendance of attorneys Dolan, Dagley, and Denton was unnecessary at June 29, 2010 hearing since only Mr. Harris and Mr. Santo[18] participated in the

---

[17] However, the Court will award Lowenstein the full requested amount of fees, $5,987.50, for time billed on June 24, 2009 and again from December 21, 2009 through March 8, 2010 because, based on the billing records, there is no overlap of work performed by the Bass Berry attorneys, concerning the subpoenas. Reimbursement of all these fees are to be split evenly between Aerogroup and DMG. The precise amount of all such fees and costs to be awarded is set forth in Section IV of this opinion.

[18] Mr. Santo argued the motion to compel the electronically stored information, which is not the subject of the instant fee application.

24

hearing.  Similarly, I find that attorneys Smith and Iverson during the May 4, 2010 telephone

conference was unnecessary because they did not participate in the conference call.  "In certain

cases, the attendance of additional counsel representing the same interests as the attorney actually

participating in a hearing 'is wasteful and should not be included in a request for counsel fees

from an adversary.'"  Apple Corps Limited, 25 F. Supp.2d at 489 (quoting Halderman, 49 F.3d at

943 (internal citation omitted).  Although a private client may wish to pay for multiple attorneys

to merely attend hearings on that client's behalf, "this practice is not necessarily reasonable when

the extra expense will be borne by the other party to the proceedings."  Id. (citing Halderman, 49

F.3d at 943).  Thus, as described in Section IV of this opinion, any such travel and preparation

time as well as travel costs will be disallowed.

Moreover, the Court also questions whether many of the email communications,

conference calls, and face-to-face meetings between co-counsel were necessary at all.  See

Maldonado, 256 F.3d at 187 (Third Circuit allowing only one third of the total hours billed for

time spent on telephones, conference calls, and meetings to plan strategy and for "miscellaneous

time.").  Here, Lowenstein is not merely serving as local counsel.  Rather, attorneys Harris, Santo

and Dolan have taken an active role in the management of this litigation.  Indeed, based on the

billing records and his declaration, after Lowenstein was substituted as counsel for OHL, Santo

took the lead in attempting to negotiate compliance with the third-party subpoenas; Santo, Harris

and Dolan all participated in the massive review of the March 2010 FBGS Litigation production;

and Harris alone argued OHL's motions to compel and for sanctions at the June 29, 2010

hearing.  Thus, the Court is stunned that Bass Berry had nearly three times as many attorneys as

Lowenstein and billed more than twice as many hours as Lowenstein since they began jointly

working on this discovery dispute in July 2009.

Despite Lowenstein's active role in litigating this case, partners Harris and Santo traveled to Bass Berry's offices in Nashville for an in person strategy meeting on June 13, 2010. Any such conferring between co-counsel could have been accomplished by emailed correspondence, teleconference, and/or videoconference. Such a trip was unnecessary.

Similarly, the Court will disallow reimbursement for the time spent preparing, testing, and using an audio/video presentation in Court at the June 29, 2010 hearing by Lowenstein and Bass Berry. Prior to the hearing, this Court specifically advised Lowenstein that the audio/video presentation was not necessary and, in fact, the Court may not allow it. While the Court did allow counsel to play a short portion of the audio/video presentation, it certainly was not necessary to argue.

Additionally, partner Harris spent over 85 hours preparing for the June 29, 2010 hearing, for a hearing, which was less than three hours and also included oral argument on other parts of OHL's motions, such as Aerogroup's electronically stored information, that are not the subject of the fee application. Harris' time is in addition to the more than 150 hours that associate Dolan, partners Denton and Dagley and associates Smith, Everitt, Bogni, Jarboe, Iverson spent in preparing for the hearing. I find the amount of time spent preparing for the hearing by all of these senior and junior attorneys is be unreasonable and excessive. See, e.g., Microsoft Corp., 216 F. Supp.2d at 393 ("It is unreasonable for *two* high-priced partners to expend roughly seventeen times as long to prepare for a hearing as to attend it."); Apple Corps Limited, 25 F. Supp.2d at 491 (finding it excessive for a senior attorney to bill three times the hours spent in preparing for a hearing as for the hearing itself, and thus reduced those hours by half).

Finally, although the Court finds that OHL's counsel properly seeks reimbursement for their time spent preparing the instant fee application, the number of hours expended by the eleven attorneys who worked on the fee application is excessive.  Indeed, had Lowenstein and Bass Berry better coordinated the work to be performed on the underlying discovery dispute, the fee application would have been less comprehensive and burdensome to prepare.  In that vein, the number of hours spent preparing, reviewing and revising the fee application by multiple attorneys is excessive.  Thus, the number of hours allowed will be reduced as described in Section IV of this opinion.  See Maldonado, 256 F.3d at 187 (allowing reimbursement for fee petition, but reducing the number of hours allowed due to excessiveness).

3.    Bass Berry and Lowenstein's Requested Fees To Be
      Borne Separately By DMG and Aerogroup

The Court has carefully reviewed the time records of Lowenstein and Bass Berry for the work performed in trying to obtain more responsive discovery responses from counsel for Aerogroup and DMG, respectively, before filing OHL's motion to compel.  The Court finds the work performed was both necessary and resulted in little, if any, duplication of efforts by the two firms.  However, for the same reasons as stated previously, the Court finds that the number senior partners and associates who performed the work, and the number of hours expended, to be excessive.  Accordingly, the total number of hours will be reduced by half.

**IV.    CONCLUSION**

In light of the foregoing, the Court will **DENY** the motions for reconsideration of both Aerogroup and DMG, and will **GRANT** OHL's fee application but reduce the amount of legal fees and costs requested by OHL to more appropriately reflect the reasonable efforts required to

27

obtain the discovery sought and the relief obtained by OHL at the June 29, 2010 hearing.  As

such, the Court concludes that OHL shall be reimbursed by Aerogroup and DMG for the

following amount of reasonable attorneys' fees and costs:

       Lowenstein
| | |
|---|---|
| Legal Fees To Be Paid By Aerogroup: | $ 41,718.75 |
| Costs To Be Paid By Aerogroup: | $   4,303.19 |
| Total: | $ 46,021.94 |

       Lowenstein
| | |
|---|---|
| Legal Fees To Be Paid By DMG: | $ 45,810.75 |
| Costs To Be Paid By DMG: | $   4,303.19 |
| Total: | $ 50,113.94 |

       Bass Berry
| | |
|---|---|
| Legal Fees To Be Paid By Aerogroup: | $ 72,280.21 |
| Costs To Be Paid By Aerogroup: | $   1,993.94 |
| Total: | $ 74,274.15 |

       Bass Berry
| | |
|---|---|
| Legal Fees To Be Paid By DMG: | $ 71,852.96 |
| Costs To Be Paid By DMG: | $   1,993.94 |
| Total: | $ 73,846.90 |

       Bressler Amery
| | |
|---|---|
| Legal Fees To Be Paid By Aerogroup: | $ 656.20 |
| Costs To Be Paid By Aerogroup: | $ 321.24 |
| Total: | $ 977.44 |

       Bressler Amery
| | |
|---|---|
| Legal Fees To Be Paid By DMG: | $ 656.20 |
| Costs To Be Paid By DMG: | $ 321.24 |
| Total: | $ 977.44 |

**Total Attorneys' Fees and Costs To Be Paid by Aerogroup:**   $ 114,655.16 (fees)
                                                                $   6,618.37 (costs)

**Total Attorneys' Fees and Costs To Be Paid by DMG:**     $ 118,319.91 (fees)
                                                                     $   6,618.37 (costs)

**Total Attorneys' Fees and Costs Award:**     $ 232,975.07 (fees)
                                                                     $  13,236.54 (costs)
                                                                    $ 246,211.61 (total)

An accompanying appropriate order will be filed in connection herewith.


                                        *s/Madeline Cox Arleo*         
                                        **MADELINE COX ARLEO**
                                        **United States Magistrate Judge**

DATED: November 15, 2010

cc:     Clerk
          Hon. Susan D. Wigenton, U.S.D.J.
          File